NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250901-U

NOS. 4-25-0901, 4-25-0902 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 2, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* N.B., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|       Petitioner-Appellee, | ) | No. 23JA39 |
|       v.      (No. 4-25-0901) | ) | |
| Jennifer M., | ) | |
|       Respondent-Appellant). | ) | |
| | ) | |
| | ) | No. 23JA40 |
| *In re* M.C., a Minor | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
|       Petitioner-Appellee, | ) | |
|       v.      (No. 4-25-0902) | ) | Honorable |
| Jennifer M., | ) | Katherine G. P. Legge, |
|       Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

## ORDER

¶ 1    *Held*:  The appellate court granted the motion to withdraw as appellate counsel and affirmed the trial court's judgments, concluding no issue of arguable merit could be raised on appeal.

¶ 2    Respondent mother, Jennifer M., appeals the trial court's judgments terminating her parental rights to her sons, N.B. (born September 2014) and M.C. (born August 2021). On appeal, respondent's appellate counsel moves to withdraw on the ground no issue of arguable merit can be raised. Respondent has filed a response to counsel's motion, raising various claims. For the reasons that follow, we grant appellate counsel's motion to withdraw and affirm the trial court's

judgments.

¶ 3                                    I. BACKGROUND

¶ 4        The parental rights of the minors' respective fathers were also terminated during the proceedings below. They are not, however, parties to this appeal.

¶ 5        In May 2024, the State filed petitions to terminate respondent's parental rights to the minors. The State alleged respondent was an unfit parent in that she failed to make reasonable progress toward the return of the minors to her care within a nine-month period following their August 3, 2023, adjudications of neglected (750 ILCS 50/1(D)(m)(ii) (West 2024)). The nine-month period was identified as August 16, 2023, to May 16, 2024.

¶ 6        In March 2025, respondent filed a combined answer to the State's petitions to terminate her parental rights. In her answer, respondent stipulated the allegations of unfitness could be proven but denied that termination of her parental rights would be in the minors' best interest.

¶ 7        Also in March 2025, the trial court conducted a hearing, where it addressed respondent's answer to the State's petitions to terminate her parental rights. Respondent's counsel averred respondent was willing to stipulate as set forth in her answer and confirmed respondent had signed the answer in counsel's presence.

¶ 8        The trial court conducted an inquiry of respondent. Respondent acknowledged the allegations of unfitness against her. Respondent confirmed she had reviewed her answer with her counsel and signed it. Respondent acknowledged she was stipulating her unfitness could be proven by clear and convincing evidence.

¶ 9        The trial court informed respondent of the rights she had related to a fitness hearing, which respondent indicated she understood. Respondent also indicated she understood she was waiving those rights by entering her stipulation to the allegations of unfitness. Respondent

confirmed she had not been threatened or promised anything for her stipulation and was entering it freely and voluntarily. Respondent also confirmed she was not under the influence of any substance that would make her unable to understand the proceedings.

¶ 10　　　　The trial court asked about a factual basis. The State requested the opportunity to provide it at a later court date. Respondent, through her counsel, expressed no objection to the State's request. The court granted the State's request. The court found respondent's stipulation was knowingly and voluntarily made.

¶ 11　　　　In April 2025, the trial court conducted a hearing, where it initially addressed respondent's stipulation to the allegations of unfitness. The court requested a factual basis from the State. The State moved to admit mental health records for respondent, which the court granted over no objection. The State also moved for judicial notice of the adjudicatory and dispositional orders related to the minors, which the court granted over no objection. The adjudicatory orders indicated the minors were adjudicated neglected based upon ongoing issues of substance abuse and domestic violence involving respondent.

¶ 12　　　　The State made a detailed proffer of evidence as it related to the expected testimony of multiple witnesses, including a caseworker and several police officers. According to the proffer, during the period of August 16, 2023, to May 16, 2024, it was recommended respondent complete a substance abuse assessment, a parenting class, individual counseling, and four drug drops a month. Respondent was largely uncooperative and resistant to recommended services during this period, none of which she completed. Respondent failed to attend two appointments to complete a qualifying substance abuse assessment and refused to complete a qualifying parenting class. She was discharged from counseling on March 11, 2024, due to verbal aggression. In April 2024, she completed a counseling assessment with another provider and then completed two counseling

sessions before the close of the relevant period. As for the recommended drug drops, respondent completed only four drops, all of which were positive for tetrahydrocannabinol. Respondent's visits with the minors during the relevant period were "not very productive" and, on February 16, 2024, the visitation ended after respondent became combative and argumentative in the minors' presence. Throughout the relevant period, respondent had multiple contacts with law enforcement for issues of domestic violence involving respondent and her paramour and respondent and her teenage daughter. Respondent appeared intoxicated during most of the contacts.

¶ 13        After respondent's counsel acknowledged the State's proffer was consistent with the provided discovery and asserted respondent persisted in her answer, the trial court found respondent unfit as alleged in the State's petitions to terminate parental rights.

¶ 14        The trial court next proceeded to the issue of whether it would be in the minors' best interest to terminate respondent's parental rights. The court received a best-interest report. The State moved to admit drug treatment and probation records for respondent, which the court granted over no objection. The State also moved for judicial notice of an order of contempt against respondent, as well as her convictions for driving under the influence and assault, all of which the court granted over no objection. The State presented testimony from two caseworkers and the minors' foster father, all of whom respondent's counsel cross-examined. Respondent testified. The following is gleaned from the evidence presented.

¶ 15        In March 2023, the minors were taken into the care of the Illinois Department of Children and Family Services (DCFS) based upon ongoing issues of substance abuse and domestic violence involving respondent. This occurred two weeks after a prior DCFS case involving respondent was closed. The minors were placed together in a traditional foster home, where they continue to remain. The minors were previously placed in that foster home as part of the earlier

DCFS case.

¶ 16	The minors are thriving in their foster home. They reside with their foster father and his three children. The minors have known their foster father since September 2022. The home is clean, and the minors share a room by choice. The foster father provides for the minors' needs. N.B. is diabetic, and M.C. has been diagnosed with fetal alcohol syndrome. The foster father has obtained additional education to address N.B.'s medical needs and assures both minors are receiving appropriate care. The minors are bonded to each other, their foster father, and their foster siblings. They also have a relationship with their foster father's adult children and extended family. N.B. has expressed a desire to be adopted by his foster father, with whom he feels safe. M.C. was too young at the time to express his views. M.C. goes to his foster father for comfort. The foster father is willing to provide the minors with permanency through adoption.

¶ 17	Between August 2023 and February 2024, respondent had weekly visits with the minors. On multiple occasions, respondent appeared intoxicated at the visits and struggled to manage her emotions. N.B. would attempt to intervene and then appear to dissociate after his pleading with respondent was unsuccessful. During a February 2024 visit, respondent was slurring her words, acting belligerent, and yelling at the minors. The visit was canceled, and respondent had to be escorted out of the building. This resulted in visits being suspended. In the fall of 2024, visits were to recommence. Because the negative impact anticipated visits were having on N.B.'s mental health, N.B. was excused from attending the visits. In November 2024, respondent began visits with M.C. The visits went well.

¶ 18	The agency assigned to monitor the minors' welfare did not believe the minors had a strong bond with respondent. N.B. reported he loved respondent but felt unsafe with her. The agency acknowledged the lack of a strong bond between N.B. and respondent was due, in part, to

the absence of recent visits. M.C. showed affection to respondent during visits. The agency did not believe a strong mother-child bond was present. Respondent testified she loved the minors and believed a bond existed between them and her.

¶ 19　　　　With respect to the previously recommended services, respondent completed a substance abuse assessment in July 2024 but then refused to engage in the recommended treatment. Respondent testified she had since been engaged in a substance abuse program. The caseworker had no knowledge of such engagement. Respondent had not completed an approved parenting class. Respondent testified she was about to start a parenting class. Respondent was engaged in counseling, and the counselor reported respondent was making progress. Respondent reported to drug drops. Respondent testified she was 50 days sober.

¶ 20　　　　The agency assigned to monitor the minors' welfare acknowledged respondent's recent efforts but continued to have concerns about her ability to safely care for the minors. The agency believed the minors deserved permanency.

¶ 21　　　　Respondent testified she was willing and able to provide for the minors. Respondent acknowledged she was incarcerated for most of January and March 2025.

¶ 22　　　　The agency assigned to monitor the minors' welfare believed it would be in the minors' best interest to terminate respondent's parental rights. Respondent disagreed.

¶ 23　　　　After considering the evidence and arguments presented, as well as the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2024)), the trial court found it would be in the minors' best interest to terminate respondent's parental rights. The court entered written orders terminating respondent's parental rights.

¶ 24　　　　This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26        On appeal, respondent's appellate counsel moves to withdraw on the ground no issue of arguable merit can be raised. Respondent has filed a response to counsel's motion, raising various claims.

¶ 27                        A. Adjudications of Neglected

¶ 28        Respondent initially suggests a nonfrivolous argument could be made challenging the minors' adjudications of neglected. Specifically, she suggests an argument could be made that (1) there was not a sufficient basis to adjudicate the minors neglected and (2) her counsel did not adequately advocate for her on this issue.

¶ 29        Appealing from a dispositional order is the proper vehicle for challenging an adjudication of neglected. *In re Leona W.*, 228 Ill. 2d 439, 456 (2008). When a respondent fails to timely appeal from the dispositional order, this court lacks jurisdiction to review an adjudication of neglected. *In re Ja. P.*, 2021 IL App (2d) 210257, ¶ 24. "Even where a respondent alleges that she received ineffective assistance of counsel during the adjudicatory phase of the proceedings, we categorically lack jurisdiction to entertain such an argument in an appeal from an order terminating parental rights." *Id.*

¶ 30        In this case, respondent has not timely appealed from the entry of the dispositional orders, and we are without jurisdiction to entertain respondent's claims related to the underlying adjudications of neglected. Accordingly, any argument challenging the minors' adjudications of neglected would be frivolous.

¶ 31                        B. Unfitness Findings

¶ 32        Appellate counsel indicates he considered challenging the unfitness findings but concluded any argument in support thereof would be frivolous. Respondent does not challenge

counsel's assessment.

¶ 33        In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. Relevant here, section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)) states a parent will be considered an "unfit person" if she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected." Reasonable progress has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. The benchmark for measuring a parent's progress toward reunification

> "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007).

¶ 34        In this case, respondent stipulated her unfitness could be proven by clear and convincing evidence. The trial court thoroughly inquired of respondent concerning the stipulation and then received evidence and a proffer indicating respondent, during the relevant period, largely failed to engage in the recommended services and continued to struggle with issues of substance abuse and domestic violence, issues which initially brought the minors into DCFS care. On this record, we agree any argument challenging the unfitness findings would be frivolous.

¶ 35                                    C. Best-Interest Findings

¶ 36            Appellate counsel indicates he considered challenging the best-interest findings but concluded any argument in support thereof would be frivolous. Respondent, in response, claims a nonfrivolous argument could be made based upon her recent efforts and progress.

¶ 37            In a proceeding to terminate parental rights, the State must prove termination is in the child's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367 (2004). When considering this issue, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2024). The focus is on the child, and the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *D.T.*, 212 Ill. 2d at 364. A best-interest finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33.

¶ 38            In this case, the trial court, after considering the evidence and arguments presented, as well as the statutory best-interest factors, found it would be in the minors' best interest to terminate respondent's parental rights. The evidence showed the minors had been placed with their foster father for over two years. The minors were thriving in the foster home, and their needs were being met. The foster father was willing and able to provide the minors with permanency through adoption. Conversely, while respondent had made recent efforts and progress, she had not completed the recommended services. Ultimately, the minors' needs for permanency and stability favored termination of respondent's parental rights. On this record, we agree any argument challenging the best interest findings would be frivolous.

¶ 39                                    D. Counsel's Performance

¶ 40            And last, appellate counsel indicates he considered challenging the performance of

respondent's counsel during the termination proceedings but concluded any argument in support thereof would be frivolous. Respondent does not challenge counsel's assessment.

¶ 41 A parent has a statutory right to counsel in a proceeding to terminate his or her parental rights. 705 ILCS 405/1-5(1) (West 2024); *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 41. To adjudicate a parent's challenge to his or her counsel's performance in a proceeding to terminate parental rights, we apply the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Ca. B.*, 2019 IL App (1st) 181024, ¶ 42. To prevail on such a challenge, a parent must show (1) counsel's performance fell below an objective standard of reasonableness and (2) but for the error, a reasonable probability exists the result of the proceeding would have been different. *Id.* (citing *Strickland*, 466 U.S. at 687-88, 694).

¶ 42 In this case, respondent's counsel during the termination proceedings developed a strategy to challenge the State's best-interest claims and then executed that strategy by cross-examining the State's witnesses and presenting supporting evidence and argument. On the record presented, we agree any argument challenging the performance of counsel during the termination proceedings would be frivolous.

¶ 43 III. CONCLUSION

¶ 44 Because the record reveals no issue of arguable merit can be raised on appeal, we grant appellate counsel's motion to withdraw and affirm the trial court's judgments.

¶ 45 Affirmed.